Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

*Local Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK AUSSIEKER**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**OMID AGHAZADEH d/b/a "GOLDEN CAPITAL HOLDINGS"**<br><br>*Defendant.* | Case No. 2:25-cv-00888-TLN-AC<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE** |

## INTRODUCTION

The Defendant's Motion to Dismiss and Motion to Strike should be denied because the Plaintiff has plausibly alleged that the Plaintiff, as well as the Class, have received text messages which constitute telephone solicitations under the TCPA because they solicited the purchase of the Defendant's real estate services. Defendant's remaining arguments should be rejected.

## BACKGROUND AND FACTUAL ALLEGATIONS

Mr. Aussiker has brought this action to enforce the consumer-privacy provisions of the TCPA alleging that Mr. Aghazadeh violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent. *See* ECF No. 1 ("Complaint"). The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39) and at no point did the Plaintiff consent to receiving telemarketing calls from the Defendant prior to receiving them. *Id.* at ¶¶ 14-15.

The Plaintiff's telephone number, 906-XXX-XXXX, is a residential, non-commercial telephone number used for personal and household reasons on the Do Not Call Registry. *Id.* at ¶¶ 16-17, 20. Plaintiff has never been a customer of Aghazadeh and never consented to receive calls or text messages from him or any of his fictitiously named entities. *Id.* at ¶ 21. Despite that fact, on November 4, 2024, the Plaintiff received a text message from 209-260-1663:

> ```
> Hello KIMBERLY, Came across your property in SACRAMENTO. Are you open to
> options to sell it?
> ```

*Id.* at ¶ 23. The Plaintiff then received another text message from that number after responding that he was not open to selling because there were people living in it.:

> ```
> Do you own the property at [NN ]A[XXXXX XXXX]?
> ```

*Id.* at ¶ 24. The Plaintiff continued to receive various text messages from the Defendant and from this telephone number asking to give a proposal on the Plaintiff's home and touted the services offered by the Defendant, using the fictitious names "Yuna Homes" and "Golden

Capital." *Id.* at ¶ 25. Defendant openly brags on Instagram about engaging in a business called "real estate wholesaling," which consists of cold-calling people that are potentially interested in selling their house, cold-calling people that are potentially interested in buying the house, and brokering a deal for the property and pocketing the difference; the post has been deleted but counsel for Plaintiff has a saved copy. *Id.* at ¶ 27. This activity requires a real estate broker license. CAL BUS. & PROF. CODE § 10131. *Id.* at ¶ 28. Defendant does not possess a real estate broker license. *Id.* at ¶ 29. Defendant has stated on Instagram that he made over $750,000 last year by engaging in such illegal real estate transactions without a license and boasts of using an automated system to send as many as 25,000 text messages per day. *Id.* at ¶ 30. Defendant also brags about using automated "SMS drips" to "maximize marketing" and invites Instagram viewers to watch a six-hour "sales call marathon." *Id.* at ¶ 31.

The aforementioned calls and text messages were all made seeking to solicit the Plaintiff to use the Defendant in the sale of a home, as well as ancillary services like connecting the Plaintiff to "investors in the SACRAMENTO area that are actively seeking to buy homes" as-is. *Id.* at ¶ 33. By Defendant's very own admission in the messages, Defendant advertises that he will connect the Plaintiff to investors interested in purchasing the property, and pocket the difference in price, that is, collect an illegal real estate commission. *Id.* at ¶ 34. *Based on Defendant's own admissions*, in exchange for providing these brokerage services, Defendant pockets the difference in the sales and purchase prices. *Id.* at ¶ 35. As a result, Defendant acts as and performs much the same services as a real estate agent for a commission. *Id.* at ¶ 36.

**LEGAL STANDARD**

The legal standard for a motion to dismiss under Rule 12(b)(6) is well-established. Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that

the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (cleaned up). The requirement that a plaintiff "show" that he is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). With a motion to strike, the court views the pleading in the light most favorable to the nonmoving party and denies the motion if there are any doubts. *Id.*

**ARGUMENT**

1. <u>The messages Plaintiff received were telephone solicitations.</u>

The Plaintiff clearly received telephone solicitations. The TCPA defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15). The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose for initiating the communication. *See Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025) ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's purpose in causing the messages to be sent."); *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. 3:22-cv-08042, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023) ("It is the purpose behind a call that controls, not what happened during the call.") (cleaned up); *Friedman v. Torchmark Corp.*, No. 3:12-cv-02837, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013) ("The Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future.").

Importantly, the offering of contingent services for which no monetary outlay is required still constitutes a "solicitation" under the TCPA. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024). Here, Defendant has offered to represent the Plaintiff in the sale of a property, by providing the Plaintiff "options to sell it." (Compl. ¶ 23). Those options included the offer of "real estate wholesaling," which essentially consists of the Defendant acing as a middleman in "brokering a deal for the property and pocketing the difference." (Compl. ¶ 27). This consists of including the Plaintiff to agree to sell a home and then connecting the Plaintiff to and selling that contract to an investor for a profit. (Compl. ¶ 33, 38). This is plainly providing a service under the TCPA. *Cacho*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024) ("Defendant's offer to represent Plaintiff clearly qualifies as an offer of services. . . . As a result . . . the challenged

calls allegedly sought to encourage *Plaintiff* to contract with Defendant and to direct a portion of a future right to payment to Defendant. While those funds would originate from a third party, the calls urged the relevant decisionmaker—namely, Plaintiff—to allocate those funds.").

      Notably, that very activity falls within the express ambit of the services covered by CAL BUS. & PROF. CODE § 10131. (Compl. ¶ 28). The Code outlines a "real estate broker" as a "person who . . . solicits prospective sellers or buyers of, solicits or obtains listings of, or negotiates the purchase, sale, or exchange of real property or a business opportunity" and one who "[s]ells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract." Importantly, California courts have interpreted the offering to help a party sell a property via the sale of a sales contract to another investor to be activity done by real estate brokers which requires a broker's license. *See, e.g.*, *Venturi & Co. LLC v. Pac. Malibu Dev. Corp.*, 172 Cal. App. 4th 1417, 1421, 92 Cal. Rptr. 3d 123, 127 (Cal. C.A. 2nd Dist. Div. 8, 2009) (explaining that contract for a "marketing strategy to secure financing," and similar services was an unlawful unlicensed brokerage contract). Nor is the Defendant a mere "finder," since Plaintiff alleges that the Defendant is the one providing the Plaintiff a contract to sign, and then selling the contract for the purchase of the house to a third party. *Tyrone v. Kelley*, 507 P.2d 65, 70 (Cal. 1973) (explaining that the only exception to the licensing requirement is a "finder," who may only bring the "parties together so that they may negotiate their own contract," and explaining that if the finder "goes further and helps to conclude the transaction by taking part in negotiating the details of the transaction, compromising or composing differences between the parties, by way of example," he is subject to the licensing requirements of the Code).

      That the Defendant is providing services here, namely, the negotiation, search for, and subsequent sale of a real estate sales contract to a network of investors, is a service the Plaintiff

is being encouraged to invest in, rendering the solicitation a telephone solicitation under the TCPA. *See Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, 2019 WL 3162199, at *4 (S.D.N.Y. June 26, 2019) ("[T]he plain meaning and common usage of the term 'service,' ... includes professional services, such as legal representation and advice."). Defendant's offer to represent Plaintiff clearly qualifies as an offer of services and renders it a solicitation. Courts have straightforwardly held that a person who is solicited to pay a portion of his ultimate sales price to an agent in exchange for listing services has purchased a service. *See McMorrow v. Core Properties, LLC*, 2023 WL 8697795, at *11 (E.D. Mo. Dec. 15, 2023) (concluding plaintiff purchased real-estate sales services in the form of a lower sale price for his house); *see also Anderson v. Catalina Structured Funding, Inc.*, 2021 WL 8315006, at *5 (W.D. Mich. Dec. 21, 2021) (explaining when defendant provided the service of converting the plaintiff's structured settlement into a lump sum, that "just because the fees may be taken out of the lump sum payment to the payee rather than itemized does not mean that no fees were charged in connection with the transaction"), *report and recommendation adopted*, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022). The same conclusion follows here where the services Plaintiff was solicited for was necessarily sought by a reduction in price on the negotiated sales contract.

It is on this point that the Defendant's citation to *Coffey* is distinguishable. In that case, the court held that a pure offer to purchase a home, without more, was insufficient as the messages plainly encouraged the Plaintiff only "engage in future selling activity" and not at all encourage the plaintiff to "engage in future purchasing activity." *Coffey v. Fast Easy Offer LLC*, No. CV-24-02725-PHX-SPL, 2025 WL 1591302, at *4 (D. Ariz. June 5, 2025). In other words, all the messages and business model in *Coffey* did was to offer to *buy* the Plaintiff's home in a manner no different than an inquisitive neighbor calling to see if the house next door might be

for sale. As other courts have held, a *pure* offer to *buy* something *from a plaintiff* does not constitute a telephone solicitation, for "telephone solicitations are calls intending to encourage a purchase by the listener, not the caller. Calls asking to purchase the listener's labor, blood, or other service are not telephone solicitations." *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at *3 (N.D. Cal. Apr. 24, 2015) (holding a survey call was not a solicitation, although it requires expenditure of the recipient's labor and information); *see also Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), aff'd, 797 F.3d 1302 (11th Cir. 2015) (holding offer to obtain blood in exchange for payment was not a solicitation); *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at *5 (S.D. Fla. Mar. 27, 2018) (offer to buy a car); *Friedman v. Torchmark Corp.*, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) (encouraging plaintiff to visit a free webinar offering a job).

But here, the Plaintiff has not pled that the Defendant merely purely offered to buy the Plaintiff's home. Rather, at its core, Plaintiff alleges that the Defendant charges an effective fee for its services by negotiating with the Plaintiff for a contract to sell their house at a reduced price and then servicing that contract by shopping it around to other investors, who will agree to buy the purchase contract for a certain amount or percentage payable to the Defendant. The outcome for the Plaintiff and other consumers is effectively the same: the Plaintiff is simply purchasing the services of a realtor, albeit in a different form: shopping out the potential sale of the house to investors rather than the general public on the MLS, all in exchange for a commission. Many other courts have seen through this façade and found similar conduct (or allegations) to violate the TCPA: calls advertising brokerage services plainly violate the TCPA. A real estate brokerage advertising its "real estate brokerage services" to unrepresented consumers is a communication "[whose] sole purpose . . . is to allow NRT to pitch its brokerage

services to the called party," and is therefore, "made 'for the purpose of encouraging the purchase' of NRT's brokerage services." *Chinitz v. NRT W., Inc.*, No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134, at *6-7 (N.D. Cal. Feb. 20, 2019). Whether calls constitute "telemarketing" should be approached "with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2013). The Defendant's "argument sounds a little like a real estate buyer's agent who tells his or her client that the home sellers will pay the fees associated with the buyer's agent's services, rather than the buyer. That is ridiculous, of course: the buyer could offer to pay less for the house if the seller did not have to pay the buyer's agent's fees." *Anderson*, 2021 WL 8315006, at *5.

      Building off this authority, and even more directly applicable here, several courts have applied these same principles to deny motions to dismiss involving similar other senders of "purchase" offers to homeowners absent prior express written consent, and in disregard of the DNC Registry, particularly when there was some evidence (as here) that the offers were not "pure" offers to purchase but rather offers to negotiate contracts, sell leads, or offers for other related services. For example, in *Eagle v. GVG Capital, LLC*, the court faced even weaker allegations to those made in this matter: the plaintiff brought claims under the TCPA against a mass-marketing homebuyer defendant who sent repeated text messages to her cellular telephone number, absent prior express written consent, for the purposes of inquiring regarding the plaintiff's interest in selling her home. No. 22-CV-00638-SRB, 2023 WL 1415615, at *1 (W.D. Mo. Jan. 31, 2023). The court, however, found that the allegation that the defendant necessarily bundled ancillary services with the purchase of a home, along with the alternative allegation that the defendant sold interested consumer leads to third party purchasers, just as here, sufficiently alleged an actionable claim. *Id.* at *3. Multiple other courts have held similarly under similar

circumstances. *See, e.g.*, *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 641 (S.D. Tex. 2023) (holding that plaintiff stated a claim where defendant was a "real estate lead generator in the business of acquiring consumer data to assist investors and realtors buy and sell homes, for profit," and not both the "service provider and purchaser," as in *Coffey*); *Helfrich v. Raven3 Home Buyers LLC*, No. 22-CV-03529 (PMH), 2023 WL 5956221, at *3 (S.D.N.Y. Sept. 13, 2023) (holding calls were telephone solicitations when it was alleged that the purpose of calls was to generate "sales and consumer leads for its salespeople"); *Wilcox v. MarketPro S., Inc.*, No. CV SAG-23-2364, 2023 WL 8806696, at *3 (D. Md. Dec. 20, 2023) (holding that the content of the messages was not dispositive when plaintiffs alleged that defendant's website made clear that it was encouraging a "surreptitious sale of its various real estate-related services, couched as a straightforward home-buying offer," which transformed the "apparent offer to purchase into a *de facto* offer to sell services"). Notably, the *Wilcox* court, *supra*, rejected the defendant's argument, similar to here, that the text of the messages themselves controlled, as opposed to extrinsic evidence pled in the complaint as to the defendant's own admitted business model. *Accord Friedman*, 2013 WL 4102201, at *6 (looking to intent, not content).

Indeed, the Court in *McMorrow* granted summary judgment *to the plaintiff* on the issue of liability for a telephone solicitation *on the same scheme as alleged here*. There, as here, the defendant admitted on its Facebook page that it "negotiates a sale price and a contract for sale with the seller, and then sends the signed contract to a title company to complete the transfer of title. [Defendant] then markets homes that it is contractually obligated to buy to individuals and entities included on its buyer's list for either sale or assignment of the purchase contract." *McMorrow*, 2023 WL 8697795, at *4. And in discovery, the template contract stated that the defendant "contemplates or may arrange the sale of the property to another potential purchaser

and, in reliance on this agreement, has procured or anticipates procurement of a contract for such potential purchaser's purchase of the property." *Id.* The Court concluded that this scheme offered services for an effective fee, as the "Plaintiff or other consumers lose out on either the benefit of the higher price paid by a third-party purchaser or the fee charged for the assignment of the purchase contract to a third-party purchaser." *Id.* at *12. This Court should do the same.

Nor does the TCPA implicate first amendment concerns or require pleading of actual damages. The Supreme Court has held that the TCPA appropriately and constitutionally regulates commercial speech and is constitutional as applied here. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 623 (2020). In any event, to the extent that the Defendant raises a constitutional challenge, it has not complied with the requirements of Rule 5.1. The TCPA's damages are statutory in nature and do not require the pleading of any concrete actual damages, either. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 804 (9th Cir. 2017) (holding TCPA provides for the greater of actual or statutory damages); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 988 (9th Cir. 2023) (receipt of an unsolicited text message constitutes concrete harm).

At bottom, the Plaintiff has included detailed allegations as to the nature of the Defendant's business model at the pleadings stage which outlines that Defendant does not purchase homes and flip them itself. Rather, by the Defendant's own admission on his Instagram page, he will evaluate a purchase price and negotiate a real estate sales contract, taking into account market conditions and similar factors, and then sell the contract to a buyer at an inflated price, just as in *McMorrow* and its progeny, and renders it distinguishable from *Jance* and *Hunsinger*, both of which dealt with pure offers to purchase, and not the service of contract negotiation and assignment, as here. As the California courts have already determined, this is identical, in form and function, to actions performed by a real estate broker, whose services are

unquestionably subject to the TCPA's prohibitions.

2. The class should not be struck.

Defendant claims that the Plaintiff's classwide allegations should be struck at the pleadings stage on the purely conclusory grounds that the Plaintiff has failed to plead a common message, and that the Plaintiff has failed to plead numerosity, commonality, ascertainability, or typicality. These underdeveloped challenges must fail. Nothing about the class claims here requires that they be *struck* at the pleadings stage, in the absence of any factual record or discovery. Dismissing class allegations at the pleading stage is rare because "the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case." *In re Wal—Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007). As such, striking class allegations at this juncture "would be inconsistent with the type of 'rigorous analysis' that this court would endeavor to undertake in deciding whether to ultimately certify a class." *Mattson v. New Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2018 WL 6735088, at *2 (D. Or. Nov. 6, 2018) (denying similar motion to strike in TCPA case).

As to the first and third points, Defendant commits a critical error, conflating Plaintiff's standing to represent class members asserting a common *claim*, founded in same legal theory with similar conduct and common questions, with the uniformity of the evidence and the *proofs* used to narrow and address issues in the resultant class list. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 394 (D. Mass. 2024) ("[T]ypicality [is] satisfied if class representative's injuries arose from 'same events or course of conduct' and his claims are 'based on the same legal theory.'"). It is well-established in the class action context generally and the TCPA class action context specifically that factual differences as to proof of class members' claims do not preclude class certification, so long as those factual differences are either immaterial to the claims' elements or otherwise susceptible to categories of generalized proof. *E.g.*, *Kolinek v. Walgreen*

*Co.*, 311 F.R.D. 483, 491–92 (N.D. Ill. 2015) (emphasis added):

> Kolinek's claim that Walgreens violated the TCPA when it placed a prerecorded prescription reminder call to his cellular phone satisfies Rule 23(a)'s typicality requirement because the class consists of all persons who received such calls. *The number of times other class members received prescription reminder calls is immaterial to the question whether those claims arise from the same course of conduct and share a common legal theory.*

*See also Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 584–85 (N.D. Ill. 2018) ("[plaintiff] shares claims that are typical to each proposed class member because she received a call from Quality to her cell phone marketing a Sempris product, like the other proposed class members."); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1142 (W.D. Mo. 2020). "[T]he TCPA does not contemplate a content-based restriction on actionable calls—it prohibits *all* calls sending prerecorded messages to certain individuals without consent, *regardless of the content of the messages*." *Starling v. KeyCity Cap., LLC*, No. 3:21-CV-818-S, 2022 WL 198403, at *5 (N.D. Tex. Jan. 21, 2022) (emphasis added). Thus, that the Defendant sent different *content* advertising its services to different people does not render the class atypical. Courts routinely certify classes, as in *Kolinek*, where class members were sent different content all alleging the same thing.

Nor does the plaintiff fail to allege numerosity, commonality, or ascertainability. Although "[a] defendant may move to deny class certification before a plaintiff files a motion to certify a class" under Federal Rule of Civil Procedure 23, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009), that is not the approach Defendant takes here. Instead, Defendant seeks to strike the class allegations in the Complaint pursuant to Rule 12(f). Courts in the Ninth Circuit in particular generally disfavor motions to strike allegations because "a motion for class certification is a more appropriate vehicle." *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009). Thus, courts have held that resort to Rule 12(f) is improper "where the issues raised in the motion to strike are the same ones that would be decided in

connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, 2008 WL 161230, *3 (S.D.N.Y. 2008). Here, the issues the Defendant raises in a conclusory fashion without further argument or development, "are the same issues that will be decided when determining whether to grant class certification." *Abboud*, 731 F. Supp. 3d 1094, 1108. The proper procedural mechanism for challenging the Plaintiff's class claims lies at class certification, not at the pleadings stage. The issues Defendant raises: numerosity, commonality, and ascertainability, are exactly the very issues that will be litigated and decided in the context of a motion for class certification and are thus procedurally premature at this stage. *Id.*

Defendant has pled no facts supporting his conclusory assertion that the plaintiff cannot meet the basic elements of Rule 23, and the two authorities to which Defendant cites are not even TCPA cases that have no seeming applicability to the case at bar. In *John*, the Fifth Circuit struck class certification of an insurance policy class action where the class members were unascertainable because class membership hinged on a myriad of individualized policy evaluation determinations. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). And in *Wright*, the Northern District of Illinois refused to certify a wage and hour class because unique defenses as to which managers promoted off-the-clock work contrary to company policy would necessitate individualized mini-trials to adjudicate unique defenses. *Wright v. Fam. Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *3 (N.D. Ill. Nov. 30, 2010).

By contrast, Courts in the Ninth Circuit and elsewhere routinely remark of the propriety of certifying TCPA class actions because of their susceptibility to classwide proof. *See, e.g., Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655–56 (4th Cir. 2019) ("The private cause of action in § 227(c)(5) offers many advantages for class-wide adjudication" because, among other

things, "the liability determinations involve no questions of individual reliance . . . [and] the damages calculations do not turn on individual evidence."); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients."); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases).

Nor do the Defendant's unwarranted and unsupported inferences that the Plaintiff has some sort of alleged ulterior motive justify striking the Plaintiff's class allegations at the pleadings stage. All the Plaintiff's email correspondences reveal is that Mr. Aussieker engaged in an investigation and attempt to resolve his claims against the Defendant. Notwithstanding the fact that the Defendant is attempting to introduce extrinsic evidence in the form of inadmissible Rule 408 communications in the context of his motion to dismiss, they account for little, as another judge has observed with respect to far more problematic communications where a plaintiff was alleged to have stated that he was "pillaging" a defendant:

> The Amended Complaint also points to transcripts of conversations in which Mr. Shelton discussed his litigation strategy. . . . That pecuniary approach to litigation might be unseemly, as the Court has observed before. But it is not illegal. *Certainly, it does not demonstrate that Mr. Shelton intends to cheat or defraud anyone.* It only shows that he intends to collect if he prevails in litigation.
> *Jacovetti L., P.C. v. Shelton*, No. 2:20-CV-00163-JDW, 2020 WL 5211034, at *3 (E.D. Pa. Sept. 1, 2020) (emphasis added). Outlining a party's potential arguments, arguing for a potential defendant's exposure, and offering to settle the case, prior to deciding whether or not it is prudent to litigate those claims, is not evidence of bad faith or maliciousness on the part of the Plaintiff. It certainly does not warrant striking the pleadings on some wild allegation of inadequacy on the utterly false basis that the Plaintiff is engaging in business dispute with a competitor. Rather, it is a component of a sound strategy, shows proper allocation of resources,

and concern for the court's time. The mere fact Mr. Aussieker attempted to negotiate an extrajudicial resolution does not render them uneritorious. "The TCPA does not merely contemplate self-interested plaintiffs—it encourages them." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017). As the Court in *Cunningham* elucidates on in expressly rejecting the very notion Defendant advocates for here:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. . . . *It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed.* But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (cleaned up) (emphasis added). Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018). "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). "Courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014). The Plaintiff's protected Rule 408 communications provide little basis to justify striking the class claims, either. This Court must refuse to strike the Plaintiff's well-pled class claims.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss and Strike should be denied and the case proceed or leave to amend granted to correct deficiencies as necessary.

Dated: June 25, 2025

                                                *s/Andrew Roman Perrong*
                                                Andrew Roman Perrong
                                                (*Pro Hac Vice*)
                                                a@perronglaw.com
                                                Perrong Law LLC
                                                2657 Mount Carmel Avenue
                                                Glenside, PA 19038
                                                215-225-5529
                                                Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all parties of record on the case.

Dated: June 25, 2025

                                                *s/Andrew Roman Perrong*
                                                Andrew Roman Perrong
                                                (*Pro Hac Vice*)
                                                a@perronglaw.com
                                                Perrong Law LLC
                                                2657 Mount Carmel Avenue
                                                Glenside, PA 19038
                                                215-225-5529
                                                Lead Attorney for Plaintiff and the Proposed Class