Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

*Local Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK AUSSIEKER**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**OMID AGHAZADEH d/b/a "GOLDEN CAPITAL HOLDINGS"**<br><br>*Defendant.* | Case No. 2:25-cv-00888-TLN-AC<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY** |

## INTRODUCTION

As the Plaintiff's opposition to the Defendant's Motion to Dismiss makes clear, the Plaintiff has plausibly alleged that he received telephone solicitations in violation of the TCPA because the messages Plaintiff received offered the Defendant's real estate services and were not a pure offer to purchase real estate. Because the motion would be apt to be denied, and because a stay would be unnecessary and severely prejudice the Plaintiff, it should be denied.

**I.     A Stay is Unnecessary and Would be Prejudicial**

Defendant's sole argument in support of its motion to stay is that his motion to dismiss may prevail. However, there is a mountain of caselaw that the Defendant's text message advertisements, which Defendant himself posted about on social media as marketing tactics to

make sales as part of a real estate contract negotiation service, were solicitations under the TCPA. The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose for initiating the communication. *See Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025) ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's purpose in causing the messages to be sent.")

Importantly, the offering of contingent services for which no monetary outlay is required still constitutes a "solicitation" under the TCPA. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024). Here, Defendant has offered to represent the Plaintiff in the sale of a property, by providing the Plaintiff "options to sell it." (Compl. ¶ 23). Those options included the offer of "real estate wholesaling," which essentially consists of the Defendant acing as a middleman in "brokering a deal for the property and pocketing the difference." (Compl. ¶ 27). This consists of including the Plaintiff to agree to sell a home and then connecting the Plaintiff to and selling that contract to an investor for a profit. (Compl. ¶ 33, 38). This is plainly providing a service under the TCPA. *Cacho*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024) ("Defendant's offer to represent Plaintiff clearly qualifies as an offer of services. . . . As a result . . . the challenged calls allegedly sought to encourage *Plaintiff* to contract with Defendant and to direct a portion of a future right to payment to Defendant. While those funds would originate from a third party, the calls urged the relevant decisionmaker—namely, Plaintiff—to allocate those funds.").

Notably, that very activity falls within the express ambit of the services covered by Cal Bus. & Prof. Code § 10131. (Compl. ¶ 28). The Code outlines a "real estate broker" as a "person who . . . does or negotiates to do one or more of the following acts for another or others, including one who "solicits prospective sellers or buyers of, solicits or obtains listings of, or

negotiates the purchase, sale, or exchange of real property or a business opportunity" and one who "[s]ells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract." Importantly, California courts have interpreted the offering to help a party sell a property via the sale of a sales contract to another investor to be activity done by real estate brokers which requires a broker's license. *See, e.g.*, *Venturi & Co. LLC v. Pac. Malibu Dev. Corp.*, 172 Cal. App. 4th 1417, 1421, 92 Cal. Rptr. 3d 123, 127 (Cal. C.A. 2nd Dist. Div. 8, 2009) (explaining that contract which provided for a "marketing strategy to secure financing" and "mutually agreed upon financial advice and investment banking services" constituted an unlawful unlicensed brokerage contract). Nor is the Defendant a mere "finder," since the Plaintiff has alleged that the Defendant is the one providing the Plaintiff a contract to sign, and then selling the contract for the purchase of the house to a third party. *Tyrone v. Kelley*, 507 P.2d 65, 70 (Cal. 1973) (explaining that the only exception to the licensing requirement is a "finder," who may only bring the "parties together so that they may negotiate their own contract," and further explaining that if the finder "goes further and helps to conclude the transaction by taking part in negotiating the details of the transaction, compromising or composing differences between the parties, by way of example," he is subject to the licensing requirements of the Code).

That the Defendant is providing services here, namely, the negotiation, search for, and subsequent sale of a real estate sales contract to a network of investors, is a service the Plaintiff is being encouraged to invest in, rendering the solicitation a telephone solicitation under the TCPA. *See Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, 2019 WL 3162199, at *4 (S.D.N.Y. June 26, 2019) ("[T]he plain meaning and common usage of the term 'service,' ... includes professional services, such as legal representation and advice."). Defendant's offer to

represent Plaintiff clearly qualifies as an offer of services and renders it a solicitation. Courts have straightforwardly held that a person who is solicited to pay a portion of his ultimate sales price to an agent in exchange for listing services has purchased a service. *See McMorrow v. Core Properties, LLC*, 2023 WL 8697795, at *11 (E.D. Mo. Dec. 15, 2023) (concluding plaintiff purchased real-estate sales services in the form of a lower sale price for his house); *see also Anderson v. Catalina Structured Funding, Inc.*, 2021 WL 8315006, at *5 (W.D. Mich. Dec. 21, 2021) (explaining when defendant provided the service of converting the plaintiff's structured settlement into a lump sum, that "just because the fees may be taken out of the lump sum payment to the payee rather than itemized does not mean that no fees were charged in connection with the transaction"), *report and recommendation adopted*, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022). The same conclusion follows here where the services Plaintiff was solicited for was necessarily sought by a reduction in price on the negotiated sales contract.

It is on this point that the Defendant's citation to *Coffey* is distinguishable. In that case, the court held that a pure offer to purchase a home, without more, was insufficient as the messages plainly encouraged the Plaintiff only "engage in future selling activity" and not at all encourage the plaintiff to "engage in future purchasing activity." *Coffey v. Fast Easy Offer LLC*, No. CV-24-02725-PHX-SPL, 2025 WL 1591302, at *4 (D. Ariz. June 5, 2025). In other words, all the messages and business model in *Coffey* did was to offer to *buy* the Plaintiff's home in a manner no different than an inquisitive neighbor calling to see if the house next door might be for sale. As other courts have held, a *pure* offer to *buy* something *from a plaintiff* does not constitute a telephone solicitation, for "telephone solicitations are calls intending to encourage a purchase by the listener, not the caller. Calls asking to purchase the listener's labor, blood, or other service are not telephone solicitations." *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at

\*3 (N.D. Cal. Apr. 24, 2015) (holding a survey call was not a solicitation, although it requires expenditure of the recipient's labor and information); *see also Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at \*10 (M.D. Fla. Dec. 31, 2013), aff'd, 797 F.3d 1302 (11th Cir. 2015) (holding offer to obtain blood in exchange for payment was not a solicitation); *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at \*5 (S.D. Fla. Mar. 27, 2018) (offer to buy a car); *Friedman v. Torchmark Corp.*, 2013 WL 1629084, at \*4 (S.D. Cal. Apr. 16, 2013) (encouraging plaintiff to visit a free webinar offering a job).

But here, the Plaintiff has not pled that the Defendant merely purely offered to buy the Plaintiff's home. Rather, at its core, Plaintiff alleges that the Defendant charges an effective fee for its services by negotiating with the Plaintiff for a contract to sell their house at a reduced price and then servicing that contract by shopping it around to other investors, who will agree to buy the purchase contract for a certain amount or percentage payable to the Defendant. The outcome for the Plaintiff and other consumers is effectively the same: the Plaintiff is simply purchasing the services of a realtor, albeit in a different form: shopping out the potential sale of the house to investors rather than the general public on the MLS, all in exchange for a commission. Many other courts have seen through this façade and found similar conduct (or allegations) to violate the TCPA: calls advertising brokerage services plainly violate the TCPA. A real estate brokerage advertising its "real estate brokerage services" to unrepresented consumers is a communication "[whose] sole purpose . . . is to allow NRT to pitch its brokerage services to the called party," and is therefore, "made 'for the purpose of encouraging the purchase' of NRT's brokerage services." *Chinitz v. NRT W., Inc.*, No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134, at \*6-7 (N.D. Cal. Feb. 20, 2019). Whether calls constitute "telemarketing" should be approached "with a measure of common sense." *Chesbro v. Best Buy*

*Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2013). The Defendant's "argument sounds a little like a real estate buyer's agent who tells his or her client that the home sellers will pay the fees associated with the buyer's agent's services, rather than the buyer. That is ridiculous, of course: the buyer could offer to pay less for the house if the seller did not have to pay the buyer's agent's fees." *Anderson*, 2021 WL 8315006, at *5.

In short, the Defendant's motion is likely to be denied.

Moreover, a stay-related delay would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *E.g., Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate").

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *E.g., Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating

non-parties in TCPA cases. *See e.g. Cooley v. Freedom Forever LLC et. al.*, Civil Action No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, Civil Action No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* Civil Action No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, Civil Action No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). There are also other prejudices not associated with calling records that the Plaintiff will face from a stay. *See Sanaah v. Howell*, 2009 Civil Action No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."). Here, the Plaintiff is simply seeking to proceed in the ordinary course with discovery. In denying a motion to stay, another federal court considered this issue in a TCPA case:

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> …
>
> In the meantime, it is clear that critical evidence, including [*22] records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, Case No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

   This Court should similarly hold.

Dated: June 25, 2025

                                          *s/Andrew Roman Perrong*
                                          Andrew Roman Perrong
                                          (*Pro Hac Vice*)
                                          a@perronglaw.com
                                          Perrong Law LLC
                                          2657 Mount Carmel Avenue
                                          Glenside, PA 19038
                                          215-225-5529
                                          Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF SERVICE

      I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all parties of record on the case.

Dated: June 25, 2025

                                          *s/Andrew Roman Perrong*
                                          Andrew Roman Perrong
                                          (*Pro Hac Vice*)
                                          a@perronglaw.com
                                          Perrong Law LLC
                                          2657 Mount Carmel Avenue
                                          Glenside, PA 19038
                                          215-225-5529
                                          Lead Attorney for Plaintiff and the Proposed Class