UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Omid Aghazadeh,
Defendant,

v.

Mark Aussieker,
Plaintiff.

Case No. 2:25-cv-00888 TLN AC

# DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

## I. INTRODUCTION

Plaintiff attempts to sustain this lawsuit under the TCPA by inferring that a brief, one-time text message inquiry about purchasing property was somehow a disguised solicitation of services. This argument lacks legal merit and relies entirely on speculation about Defendant's broader business practices, not on the actual content of the message Plaintiff received.

As numerous courts have recognized, a message that merely asks whether a recipient is open to selling their property does not constitute a "telephone solicitation" under the TCPA. Plaintiff's opposition fails to distinguish those rulings and instead urges this Court to infer liability from Defendant's purported business model. That approach conflicts with both the statutory text and well-established case law. Accordingly, the motion to dismiss should be granted.

Even if the individual claim proceeds, the class allegations are facially defective and should be stricken now under Rule 12(f) and Rule 23(d)(1)(D). The proposed class is impermissibly overbroad, fail-safe, and would require individualized adjudications incompatible with class treatment. Striking the class allegations now is both warranted and efficient.

In fact, Rule 23(c)(1)(A) directs courts to determine whether to certify a class **"at an early practicable time"**. This directive reflects that courts may – and should – address class allegations early when the pleadings show a class action cannot be maintained. Consistent with that mandate, the Ninth Circuit has held that nothing in Rule 23 precludes a defendant from seeking an early resolution of class certification issues; the only requirement is that the question be decided as soon as practicable. Striking Plaintiff's class allegations now thus comports with Rule 23's timing directive and would avoid needless expenditure of resources on an uncertifiable class.

## II. PLAINTIFF FAILS TO ALLEGE A "TELEPHONE SOLICITATION" UNDER THE TCPA

Under the TCPA, a "telephone solicitation" is a call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). The one-time text Plaintiff received merely asked if he was open to selling property. It made no offer of services, did not promote a business or product, and contained no language that would induce Plaintiff to purchase or invest in anything.

This is not a theoretical distinction—numerous courts have dismissed TCPA claims under materially identical facts. See, e.g., Coffey v. Fast Easy Offer LLC, 2025 WL 1591302 (D. Ariz.); Jance v. Homerun Offer LLC, 2021 WL 878061 (D. Ariz.); Hunsinger v. Alpha Cash Buyers LLC, 2023 WL 2377485 (N.D. Tex.). These cases hold that messages expressing interest in purchasing property do not fall within the TCPA's solicitation scope.

While Plaintiff speculates about Defendant's broader business model, the TCPA's analysis turns on the content and purpose of the specific message—not the sender's line of work. The statute defines a "telephone solicitation" as a call made to encourage the *purchase or rental* of property, goods, or services, not a call offering to *buy* something from the recipient. Defendant's text made no reference to any service, fee, commission, or offer to facilitate a transaction. It merely asked whether the recipient was open to selling a property. Courts have consistently held that such communications fall outside the scope of a "telephone solicitation" under 47 U.S.C. § 227(a)(4), regardless of the sender's commercial interests or downstream goals. See, e.g., Orea v. Nielsen Holdings PLC, 2015 WL 1885936 (N.D. Cal.).

## III. PLAINTIFF'S THEORY IS CONJECTURAL AND UNSUPPORTED BY THE MESSAGE CONTENT

Plaintiff's theory—that Defendant is soliciting sellers into a fee-based arrangement—is not grounded in the text message itself. The Complaint admits the text did not mention a service or financial obligation. Plaintiff asks the Court to impute liability based on Defendant's alleged social media statements and speculative intent. Courts do not interpret the TCPA this way.

The statutory analysis focuses solely on whether the call or message "encouraged" a purchase or service. See Stoutt v. Travis Credit Union, 2021 WL 5565339 (E.D. Cal.). That test is not met here.

## IV. PLAINTIFF'S POST-EXCHANGE CONDUCT AND PRE-SUIT DEMANDS FURTHER UNDERMINE HIS CLAIM

Far from being bothered by the message, Plaintiff responded to it cooperatively, provided his availability for a follow-up phone call, and never opted out. Only after this exchange did Plaintiff issue a demand for $15,000.

This conduct raises legitimate questions about Plaintiff's motivation. Rather than being the target of a telemarketing campaign, Plaintiff appears to have sought leverage for a settlement. Courts have repeatedly expressed concern with opportunistic TCPA claims filed for leverage rather than to remedy actual harm. See Hernandez v. Path, Inc., 2014 WL 1724766 (N.D. Cal. Apr. 29, 2014).

## V. THE CLASS ALLEGATIONS ARE FACIALLY DEFECTIVE AND SHOULD BE STRICKEN

A. **Overbroad and Fail-Safe Class Definition**

Plaintiff's class is defined in terms that render it both impermissibly overbroad and fail-safe. It includes individuals who received calls "in violation of the TCPA," thereby defining membership by the merits of the claim. This is impermissible. See Ruiz Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1138 n.7 (9th Cir. 2016); Pepka v. Kohl's Dep't Stores, Inc., 2016 WL 8919460 (C.D. Cal.). Courts routinely strike such class allegations at the pleading stage.

B. **Individualized Issues Preclude Class Treatment**

TCPA claims often rise and fall on whether a person consented to contact, had a prior relationship with the caller, or revoked consent. These are inherently individual inquiries. See Dorfman v. Albertson's, LLC, 2020 WL 86192 (D. Idaho); Tillman v. Hertz Corp., 2019 WL 3231377 (N.D. Ill.). Courts deny certification or strike such class allegations early when it's clear commonality and predominance cannot be met.

C. **Plaintiff Is Atypical and Inadequate**

Plaintiff's own conduct—engaging in a back-and-forth with Defendant, then issuing a $15,000 demand—makes him an atypical and inadequate class representative. He has alleged facts and raised issues that are not shared by any other class members, including motivations that may be inconsistent with protecting absent class members. See Barnes v. The Coca-Cola Co., No. 1:22-cv-01511 (E.D. Cal. Apr. 4, 2025).

D. **Plaintiff's Reliance on Defendant's Social Media Post Does Not Cure the Class Definition Defects**

Plaintiff references a social media post in an effort to suggest that the alleged conduct was uniform and thus supports class treatment. But even taken at face value, such a post does not remedy the structural defects in Plaintiff's class definition. The legal adequacy of a class cannot hinge on general assertions outside the pleadings. Moreover, Plaintiff's claims still require individualized inquiries into whether each alleged recipient was on the National Do Not Call Registry, whether they provided consent, and whether any communication constituted a telephone solicitation under the TCPA. These issues cannot be presumed or resolved by social media commentary. Plaintiff's reliance on generalized volume claims cannot transform a facially defective class definition into one suitable for certification. Rule 23 requires objective, manageable criteria to define a class—not assumptions or inferences based on third-party characterizations.

| Rule 23 Requirement | Defending Argument | Supporting Evidence |
|---|---|---|
| Numerosity | Plaintiff alleges no facts showing hundreds affected, speculative. | Lack of volume data in complaint. |
| Commonality | Individualized consent issues predominate, no common message alleged. | Cited cases like Tillman v. Hertz Corp., 2019 WL 3231377. |
| Typicality | Plaintiff's conduct (responding positively) is atypical, not shared by class. | Email and text exchanges (Exhibit A & B). |
| Adequacy | Competitive motive (email seeking injunction "where it hurts me") undermines role. | Email dated January 6, 2025, in attachments. |

**VI. CONCLUSION**

In light of the foregoing, Defendant respectfully submits that Plaintiff's class allegations are incurably defective and should be stricken under Rule 12(f) and/or Rule 23(d)(1)(D). The proposed class is overbroad, unascertainable, and defined in a way that requires resolving the merits to determine class membership—rendering it a textbook fail-safe. Allowing the class allegations to proceed as pled would force Defendant to endure costly and expansive discovery on a class that cannot be certified. Courts routinely strike class allegations at the pleading stage to prevent precisely this kind of unnecessary burden where the defects are apparent on the face of the Complaint.

Accordingly, Defendant requests that the Court strike the class allegations in their entirety. If, however, the Court declines to strike them at this stage, Defendant respectfully requests that the Court require Plaintiff to amend the class definition to cure the identified defects before permitting any class-based discovery to proceed.

Respectfully submitted,

Omid Aghazadeh
Pro Se Defendant
Dated: July 2, 2025