1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARK AUSSIEKER,                              No.  2:25-cv-0888 TLN AC (PS)

12               Plaintiff,

13         v.                                      FINDINGS AND RECOMMENDATIONS

14    OMID AGHAZADEH,

15               Defendant.

16

17         Defendant is proceeding in this matter pro se, and pre-trial proceedings are accordingly

18    referred to the undersigned pursuant to Local Rule 302(c)(21).  Defendant filed a motion to

19    dismiss.  ECF No. 22.  The court recommends the motion to dismiss be GRANTED for the

20    reasons set forth below.

21                                      **I.  Background**

22                A.      The Complaint

23         This is a putative class action brought under the Telephone Consumer Protection Act of

24    1991 ("TCPA"), 47 U.S.C. § 227.  ECF No. 1 at 1.  Plaintiff's personal telephone number is on

25    the National Do Not Call Registry.  Id. at 4.  Plaintiff has never been a customer of Aghazadeh's,

26    nor did he ever consent to be contacted by Aghazadeh.  Id.  Nonetheless, plaintiff alleges that on

27    November 4, 2024 ta 8:25 AM, he received a text message from 202-260-1663.  Id.  The message

28    read. "Hello KIMBERLY, Came across your property in SACRAMENTO.  Are you open to

                                              1

1  options to sell it?"  Id. at 5.  Plaintiff responded that he was not open to selling the property

2  because there were people living in it.  Id.  He then received a second text, reading "Do you own

3  the property at [NN ]A[XXXXX XXXX]?"  Id.

4     Plaintiff continued to receive various text messages from the defendant asking to give a

5  proposal on the plaintiff's home and touted the services offered by the defendant, using the

6  fictitious names "Yuna Homes" and "Golden Capital."  Id.  Plaintiff contacted the defendant's

7  telephone company to ascertain who was texting him illegally with fake names, and the telephone

8  company responded stating that the customer of record was "Golden Capital Holdings, LLC"

9  with an address in Chatsworth, CA, and the responsible person on the account was defendant

10  Omid Aghazadeh.  Id.  Plaintiff alleges that defendant "openly brags" on Instagram about

11  engaging in a business called "real estate wholesaling," which consists of cold-calling people that

12  are potentially interested in selling their house, cold-calling people that are potentially interested

13  in buying the house, and then brokering a deal for the property and pocketing the difference.  Id.

14  Plaintiff contends that this activity requires a real estate brokers license pursuant to Cal. Bus. &

15  Prof. Code §10131, and defendant does not have a real estate license.  Id.  Plaintiff alleges

16  defendant posted on Instagram that he uses an automated system to send as many as 25,000 text

17  messages per day, that he has made over $750,000 in the last year by engaging in this practice.

18  Id.

19     Plaintiff received a phone call from defendant's number on November 25, 2024.  Id. at 6.

20  All text messages and phone calls received were nonconsensual.  Id.  Plaintiff alleges that the

21  purpose of the contact was to solicit him to sign up for the defendants' products and services.  Id.

22  Plaintiff seeks to represent a class consisting of "All persons in the United States whose (1)

23  telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who

24  received more than one telemarketing call from or on behalf of Defendant promoting Golden

25  Capital's goods or services, (3) within a 12-month period (4) at any time in the period that begins

26  four years before the date of filing this Complaint to trial."  Id. at 8.  On behalf of himself and the

27  putative class, plaintiff sues defendant for a single count of violation of the TCPA.  Id. at 9.

28  ////

2

1       B.  <u>Motion to Dismiss</u>

2       Defendant moves to dismiss the complaint in its entirety, arguing that the communications

3 did not violate the TCPA because they offered to purchase a property rather than sell a good or

4 service, and to dismiss the class claims because plaintiffs' class allegations are facially deficient,

5 and plaintiff is disqualified from service as a class representative.  ECF No. 22 at 1.

6                **II.  Analysis**

7       A.  <u>Legal Standards Governing Motions to Dismiss</u>

8         1.  <u>Standards Under Rule 12(b)(1)</u>

9       Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

10 motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

11 claims alleged in the action.  When a party brings a facial attack to subject matter jurisdiction,

12 that party contends that the allegations of jurisdiction contained in the complaint are insufficient

13 on their face to demonstrate the existence of jurisdiction.  <u>Safe Air for Everyone v. Meyer</u>, 373

14 F.3d 1035, 1039 (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type, the factual allegations of

15 the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege

16 an element necessary for subject matter jurisdiction.  <u>Savage v. Glendale Union High Sch. Dist.</u>

17 <u>No. 205</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); <u>Miranda v. Reno</u>, 238 F.3d 1156, 1157 n.1 (9th

18 Cir. 2001).

19         2.  <u>Standards Under Rule 12(b)(6)</u>

20       "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

21 sufficiency of the complaint."  <u>N. Star Int'l v. Ariz. Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir.

22 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

23 sufficient facts alleged under a cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't.</u>, 901

24 F.2d 696, 699 (9th Cir. 1990).

25       In order to survive dismissal for failure to state a claim, a complaint must contain more

26 than a "formulaic recitation of the elements of a cause of action;" it must contain factual

27 allegations sufficient to "raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v.</u>

28 <u>Twombly</u>, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of

1   facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

2   action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35

3   (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to

4   'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

5   (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

6   factual content that allows the court to draw the reasonable inference that the defendant is liable

7   for the misconduct alleged."  Id.

8          In reviewing a complaint under this standard, the court "must accept as true all of the

9   factual allegations contained in the complaint," construe those allegations in the light most

10  favorable to the plaintiff and resolve all doubts in the plaintiff's favor.  See Erickson v. Pardus,

11  551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

12  960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

13  Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of

14  factual allegations, or allegations that contradict matters properly subject to judicial notice.  See

15  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

16  Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t

17         B.   Attached Evidence

18         As a preliminary matter, the court notes that defendant has attached exhibits to his motion

19  that are not subject to judicial notice and are not part of the pleading, and the court therefore

20  cannot consider these documents on a motion to dismiss.  "When ruling on a Rule 12(b)(6)

21  motion to dismiss, if a district court considers evidence outside the pleadings, it must normally

22  convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the

23  nonmoving party an opportunity to respond."  United States v. Ritchie, 342 F.3d 903, 907 (9th

24  Cir. 2003).  The court declines to convert defendant's motion into a motion for summary

25  judgment.  The attached documents are accordingly not considered.

26         C.   Failure to State a Claim

27         Defendant argues that plaintiff fails to state a claim as to its sole cause of action, violation

28  of the TCPA.  The TCPA prohibits initiating "more than one telephone [solicitation] within any

4

1    12-month period" to a "residential telephone subscriber who has registered his or her telephone

2    number on the national do-not-call registry."  47 U.S.C. § 227(c)(5).  "Telephone solicitation"

3    means "the initiation of a telephone call or message for the purpose of encouraging the purchase

4    or rental of, or investment in, property, goods, or services, which is transmitted to any person ...."

5    47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).  Whether a call or text is considered a

6    solicitation is determined by the purpose of the message.  Chesbro v. Best Buy Stores, L.P., 705

7    F.3d 913, 918 (9th Cir. 2012).

8        Defendant primarily relies on a recently decided case from the District of Arizona which

9    presented analogous facts.   In Coffey v. Fast Easy Offer LLC, U.S. District Judge Steven P.

10    Logan evaluated a case in which plaintiff Vicki Coffey, whose number was on the Do Not Call

11    Registry, received "numerous telephone calls and text messages from a rotating series of phone

12    numbers, seeking to solicit [Coffey] to sell her home or engage various entities to represent or

13    assist her in the sale of her home."  24-cv-02725-PHX-SPL, 2025 WL 1591302, at *1, 2025 U.S.

14    Dist. LEXIS 106786 (D. Ariz. June 5, 2025).  The initial text sent to Coffey read, "Hello Vickey,

15    this Yannick the home buyer.  Have you given up on selling your ... property?"  Id.  The second

16    text read, "Have you given up on selling your property?"  Id.  Coffey did not recognize the callers

17    and was not looking to sell her home; when she asked the caller to identify the party responsible

18    for these messages, she was provided a website link to https://www.fasteasyoffer.com.  Id. Coffey

19    brought suit against Fast Easy Offer LLC ("Fast"), alleging that the text messages she received

20    constituted "telephone solicitations" in violation of the TCPA.  Id.  As defendant does in this

21    case, Fast moved to dismiss, arguing that Coffey "failed to plausibly allege a solicitation because

22    her alleged caller 'wanted to buy her home,' but did not ask [her] 'to herself purchase, rent, or

23    invest in anything.'"  Id. at *2.

24        As plaintiff does here, Coffey argued that although "the TCPA's plain text focuses on

25    calls and messages that encourage the solicited party's purchase or rental of, or investment in,

26    property, goods, or services . . . [Fast's] offer to purchase her home contains within it an implied

27    offer of services;" essentially, Fast's messages were a pretextual attempt to encourage Coffey to

28    sell her home through Fast, to Fast's pecuniary benefit.  Id. at 3.  Judge Logan rejected this

5

1    argument and dismissed the case.  After analyzing relevant caselaw, Judge Logan explained that

2    "even assuming that [Fast] intended to ultimately generate business based on the sale of

3    [Coffey's] home, the messages and calls [Coffey] received relate to future potential advertising.

4    And the fact that [Coffey] was directed to [Fast's] website, which advertises its real estate

5    services, is not itself dispositive, as 'the mere inclusion of a link to a website on which a

6    consumer can purchase a product does not transform the whole communication into a

7    solicitation." Id. at 4 (quoting Vallianos v. Schultz, No. 19-cv-0464-JCC, 2019 WL 4980649, at

8    *3, 2019 U.S. Dist. LEXIS 174729, at *9–10 (W.D. Wash. Oct. 8, 2019)).

9         Judge Logan expressed sympathy to Coffey's "skepticism regarding this buying/selling

10   distinction, especially where the end result is the same: [Fast] make[s] money off [Coffey].  It is

11   true that, construing [Coffey's] factual allegations in the most favorable light, were [Coffey] to

12   agree to use [Fast's] services to sell her house, [Fast] would ultimately benefit from an 'effective

13   fee' deducted from the offer price." Id.  Judge Logan acknowledged that taking that view, "the

14   calls and texts might constitute 'solicitations' in the colloquial sense of the word." Id.

15   Nonetheless, Judge Logan explained, under this rationale Coffey would still be *making* money on

16   the sale of her home, even if Fast took a cut of the profits.  Id.  In determining that Fast's actions

17   did not violate the TCPA because they were not solicitations within the definition of that statute,

18   Judge Logan noted that plaintiff's "quarrel is with Congress" which did not define "solicitation"

19   in a manner that includes Fast's actions.  Id. (quoting Facebook, Inc. v. Duguid, 592 U.S. 395,

20   409 (2021)).

21        The undersigned finds the reasoning of Coffey to be persuasive.  An offer to buy simply

22   does not fall within the statutory definition of "solicitation" because it is not a communication

23   "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or

24   services, which is transmitted to any person ...." See 47 U.S.C. § 227(a)(4); 47 C.F.R. §

25   64.1200(f)(15).  Unsolicited offers to buy may indeed be as unwelcome and intrusive as are

26   unsolicited offers of property, goods or services for sale—but Congress addressed only the latter

27   problem in the TCPA.  The court lacks the authority to construe the statute more broadly that its

28   language permits in order to address the harm plaintiff seeks to redress.

1       Plaintiff attempts to distinguish <u>Coffey</u> by stating that the messages sent in that case were

2    "pure" offers to buy.  ECF No. 27 at 7-8.  But the messages sent in <u>Coffey</u> were no more pure

3    offers to buy than those sent to plaintiff.   Plaintiff alleges the text messages he received read

4    "Hello KIMBERLY, Came across your property in SACRAMENTO. Are you open to options to

5    sell it?" and "Do you own the property at [NN ]A[XXXXX XXXX]?"  ECF No. 1 at 4-5.  The

6    messages sent to Coffey read "Hello Vickey, this Yannick the home buyer.  Have you given up

7    on selling your ... property?" and  "Have you given up on selling your property?"  <u>Coffey</u>, 2025

8    WL 1591302, at *1.  There is no appreciable difference.

9        Indeed, plaintiff's argument here is exactly the same as the argument made by Coffey: that

10    defendant's offer to buy plaintiff's house was really a solicitation for a service from which

11    defendant would ultimately make money.  ECF No. 27 at 8.  This argument was expressly, and

12    the undersigned believes correctly, rejected by Judge Logan.  The undersigned agrees with

13    defendant that the TCPA claim must be dismissed for failure to state a claim upon which relief

14    can be granted.

15        While plaintiff makes allegations regarding defendant's unlicensed practice of real estate,

16    these allegations are unrelated to the TCPA claim which is the only cause of action in this case.

17    Because plaintiff failed to state a claim that defendant violated the TCPA, the undersigned finds

18    defendant's motion to dismiss should be GRANTED.

19                   **III.  Conclusion**

20        The undersigned recommends that defendant's motion to dismiss (ECF No. 22) be

21    GRANTED and that this case be closed.

22        These findings and recommendations are submitted to the United States District Judge

23    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

24    after being served with these findings and recommendations, any party may file written

25    objections with the court and serve a copy on all parties.  <u>Id.</u>; <u>see also</u> Local Rule 304(b).  Such a

26    document should be captioned "Objections to Magistrate Judge's Findings and

27    Recommendations."  Failure to file objections within the specified time may waive the right to

28    ////

appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez

v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: July 18, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE